UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| J&H Business Institute Corp, | § |
| | § |
| Plaintiff, | § |
| | § |
| vs | § Civil Action No. |
| | § |
| Matthew Lobene, | § |
| | § |
| Defendant. | § |

# COMPLAINT

Plaintiff, J & H Business Institute Corp, ("Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant, Matthew Lobene ("Defendant"), for breach of a Settlement Agreement and fraud and states as follows:

## NATURE OF THE ACTION

1. This is an action for breach of a written Settlement Agreement executed on September 23, 2024 (the "Agreement"), between Plaintiff and Defendant, which resolved a prior lawsuit filed in this Court, Civil Case No. 4:24-cv-3292 (the "Prior Lawsuit"), for $2,115,300.00. Defendant has failed to perform his material obligations under the Agreement, including making required payments and assigning equity interests in Purefield Treatment Strategies, LLC to assist in payment of the settlement of $2,115,300.00. Defendant further misrepresented to Plaintiff that Purefield Treatment Strategies, LLC had a high valuation and significant cash flows, when in fact Plaintiff learned after the settlement that the company has no cash flows and no discernible value, rendering the equity assignment provisions of the Agreement worthless and illusory. As a result of Defendant's breaches and misrepresentations, Plaintiff now seeks a monetary judgment for the full

amount owed under the Agreement, totaling $2,115,300 ($984,565 + $1,130,735), plus pre- and post-judgment interest, attorneys' fees, costs, exemplary damages, and other equitable relief as the Court deems just.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) since there is complete diversity of citizenship between Plaintiff (Plaintiff is a corporation with its principal place of business in Harris County, Texas) and Defendant (a citizen of Miami-Dade County, Florida), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and the express terms of the Agreement, which designates Harris County, Texas, as the exclusive venue for any disputes arising under the Agreement (Agreement § 7). This Court is located in Harris County, Texas.

4. On September 23, 2024, Plaintiff and Defendant entered into the written Settlement Agreement to resolve the Prior Lawsuit. A true and correct copy of the Agreement is attached hereto as Exhibit A and incorporated herein by reference.

5. Under the Agreement, Defendant agreed to the following material obligations:

a. Payment: Defendant was to pay Plaintiff $984,565 on or before December 31, 2024, via bank wire or comparable secure electronic funds transfer mechanism (Agreement § 2).

b. Collection to assist in payment of the settlement via Equity Assignment: Defendant was to assign to Plaintiff an equity interest, revenue-share interest, or similar instrument in Purefield Treatment Strategies, LLC, a Wyoming corporation, within 15 days of the Agreement's execution (i.e., by October 8, 2024). This interest was to be levied, leveraged, sold, or otherwise monetized to facilitate collection of an additional $1,130,735 owed to Plaintiff. Upon full collection, the interest would revert to Defendant (Agreement § 2).

c. Separate Equity Assignment: By December 1, 2024, Defendant was to assign additional equity in Purefield Treatment Strategies, LLC to an entity designated by Plaintiff for advisory and consultation services. This assignment was wholly separate and unrelated to the Collection via Equity Assignment (Agreement § 2).

6. During the negotiations leading up to and at the execution of the Agreement, Defendant represented to Plaintiff that Purefield Treatment Strategies, LLC was a highly valued company with substantial cash flows, significant royalties, dividends, and profits, which would readily enable Plaintiff to monetize the assigned interests and recover the full $1,130,735 under the Collection via Equity Assignment. These representations were material to Plaintiff's decision to accept the equity-based terms in lieu of immediate full cash payment.

7. Plaintiff reasonably and detrimentally relied on Defendant's representations regarding the value, cash flows, and monetization potential of Purefield Treatment Strategies, LLC in entering into the Agreement, particularly the equity assignment provisions.

8. Plaintiff has since discovered, through independent investigation, that Purefield Treatment Strategies, LLC has no cash flows, no royalties, no dividends, no profits, and no discernible value, rendering the equity assignment provisions of the Agreement worthless, unenforceable, and incapable of facilitating the collection of the $1,130,735 or providing any value for the Separate Equity Assignment. This discovery confirms that Defendant's representations were false at the time they were made.

9. Plaintiff fully performed its obligations under the Agreement, including taking all necessary legal steps to remove Defendant as a defendant from the Prior Lawsuit with prejudice within 48 business hours of the Agreement's execution, as required by Agreement § 3. Plaintiff

also stands ready to collaborate with Defendant in further legal actions against co-defendants, as required by Agreement § 4.

10. Defendant has materially breached the Agreement by failing to:

a. Make the required payment of $984,565 by December 31, 2024, or at any time thereafter;

b. Assign any equity interest, revenue-share interest, or similar instrument in Purefield Treatment Strategies, LLC by October 8, 2024, or at any time thereafter, for the purpose of collecting the $1,130,735 owed; and

c. Assign any additional equity in Purefield Treatment Strategies, LLC by December 1, 2024, or at any time thereafter, for advisory and consultation services.

11. Since the execution of the Agreement, Defendant has engaged in a pattern of deceptive conduct by repeatedly assuring Plaintiff that payments, equity assignments, and/or funds would be forthcoming "shortly," "within weeks," or "imminently," thereby inducing Plaintiff to forbear from immediate enforcement actions. These assurances were made on a near-weekly basis through various communications, including text messages, WhatsApp messages, and phone calls, but Defendant has failed to deliver on any of them as of the date of this filing. This pattern of post-execution promises further evidences Defendant's bad faith and intent to avoid his obligations. For example:

a. On September 22, 2024 (the day prior to Agreement execution, but part of ongoing inducement discussions), Defendant stated: "We have already signed for the capital and that will be dispersed this week to purchase equity. The line of credit will come active in about a week as per Northern Trusts banker."

      b. On October 16, 2024 (after the October 8, 2024 equity assignment deadline), Defendant stated: "We are preparing to finalize funding this week for you."

      c. On November 8, 2024, Defendant stated: "It's about to get real" in reference to impending funding and project developments.

      d. On November 28, 2024, Defendant explained the carbon credit sales process, stating: "We have them sold. On Monday our first PDD goes to the registry and 30-45 days from there they will be approved (most likely 3 weeks)... Than per our contracts with clients they have 15 days to pay us cash." He further added: "We literally have companies right now that will do futures contracts for 6 years" and "On Friday I have a company that will pay us before it clears the registry in 45 days but they want to pay us 25 dollars lol... So there are so many options."

      e. On December 9, 2025, Defendant stated: "I can send deposit tomorrow finally" and "Took a year but now it's going to flow," requesting cryptocurrency addresses for a deposit.

      f. On December 11, 2025, Defendant stated: "100k deposit... Should be today... It's coming."

      g. On December 16, 2025, Defendant stated: "Should be clear to go at 10am tomorrow... Deposit to you."

      h. On December 17, 2025, Defendant stated: "I have refreshed my account 150 times today... I am literally waiting for it to show up... Now."

      i. On December 19, 2025, Defendant stated: "Well I signed a tax document Friday morning on these funds... So let's plan on Monday you have it... I was suppose to have it all weds but we had to fix 2 documents."

      j. On December 24, 2025, Defendant stated: "Okay. Enjoy today. Call me Friday morning after Christmas. Will have deposit ready for you than I need an Iolta agreement asap."

k. On December 28, 2025, Defendant stated: "I'm going to send you what is needed. 17M... I drove to NYC to sign some paper work so hopefully tomorrow I have some money for you as well."

l. On December 30, 2025, Defendant stated: "Will have email back to you any time now... Will be done in NYC today. Than I call you will all the exact steps and will be liquid today."

m. On January 5, 2026, Defendant stated: "I am tracking all sorts of payments this week so we can breath and move forward."

n. On January 9, 2026, Defendant stated: "I'm still in NY... Not leaving until this money is in the account... It is coming I promise."

o. On January 11, 2026, Defendant stated: "Yes. The money is being sent over from Hong Kong this week officially."

p. On February 3, 2026, Defendant stated: "Tomorrow should be the day I send deposit... Also I have my large investor ready this week that signed the escrow."

q. On February 6, 2026, Defendant stated: "I have not yet... But all is done on my end... I can have it out Monday latest it will be to them Tuesday."

12. Defendant's failures constitute material breaches of the Agreement, particularly given the express provision that "time is of the essence" and that failure to meet any deadline may constitute a material breach (Agreement § 9). These breaches have deprived Plaintiff of the benefit of the bargain and caused substantial harm.

13. As a direct and proximate result of Defendant's breaches, misrepresentations, and ongoing deceptive assurances, Plaintiff has suffered damages, including but not limited to the unpaid settlement amounts of $2,115,300, as well as additional costs and expenses, such as legal

fees and investigative costs, incurred in attempting to enforce the Agreement and mitigate its damages.

**COUNT I: BREACH OF CONTRACT**

14. Plaintiff incorporates by reference the allegations in paragraphs 1 through 15 as if fully set forth herein.

15. The Agreement is a valid and enforceable contract between Plaintiff and Defendant, governed by the laws of the State of Texas (Agreement § 7).

16. Plaintiff performed all conditions precedent and its obligations under the Agreement.

17. Defendant materially breached the Agreement by failing to perform the obligations set forth in paragraph 12 above.

18. Defendant's breaches have caused Plaintiff to suffer damages in the amount of at least $2,115,300, plus additional costs and expenses, including attorney fees and costs.

19. Plaintiff is entitled to recover its actual damages, pre- and post-judgment interest at the maximum allowable rate, costs, and reasonable attorneys' fees pursuant to the Agreement and Tex. Civ. Prac. & Rem. Code § 38.001 et seq.

**COUNT II: FRAUDULENT INDUCEMENT**

20. Plaintiff incorporates by reference the allegations in paragraphs 1 through 15 as if fully set forth herein.

21. During negotiations and execution of the Agreement, Defendant knowingly or recklessly made false representations of material fact to Plaintiff regarding the high valuation, significant cash flows, royalties, dividends, and monetization potential of Purefield Treatment Strategies, LLC, as detailed in paragraphs 8 and 10.

22. Defendant made these representations with knowledge of their falsity or with reckless disregard for the truth, and with the intent to induce Plaintiff to enter into the Agreement and accept the equity assignment provisions in lieu of full immediate payment.

23. Plaintiff justifiably relied on Defendant's misrepresentations to its detriment, as it would not have agreed to the equity-based terms absent such assurances.

24. As a direct and proximate result of Defendant's fraudulent inducement, Plaintiff has suffered damages, including the inability to recover the $1,130,735 contemplated by the Collection via Equity Assignment, the worthlessness of the Separate Equity Assignment, and additional enforcement costs.

25. Plaintiff is entitled to recover compensatory damages, exemplary (punitive) damages due to Defendant's knowing or reckless conduct, pre- and post-judgment interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant on Counts I and II;

B. Award Plaintiff compensatory damages in the amount of $2,115,300, or such greater amount as may be proven at trial, for breach of the Settlement Agreement;

C. Award Plaintiff compensatory and exemplary damages for fraudulent inducement in an amount to be determined at trial;

D. Award Plaintiff pre- and post-judgment interest at the maximum rate allowed by Texas law;

E. Award Plaintiff its reasonable attorneys' fees and costs incurred in this action pursuant to the Agreement and applicable law;

F. Grant such other and further relief as the Court deems just and proper, including but not limited to specific performance or rescission if deemed appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: March 6th, 2026

Respectfully submitted,

Robert L. Smith, TBA #24135445
**ROBERT L. SMITH, P.C.**
Attorney at Law
3501 East 31st Street
Tulsa, OK  74135
(918) 587-4710
(918) 587-4767 (Facsimile)
rsmith@robertlsmithlaw.com
*Attorney for Plaintiff*